UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>   Plaintiff,<br><br>v.<br><br>NURSE STEVE YOUNG, WARDEN RICHARDSON, SERGEANT SMITH, R.N. H. SCHLAGETER, NURSE DOE,<br><br>   Defendants. | Case No. 1:24-cv-00117-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Kent Williams filed a prisoner civil rights Complaint in this matter. He asserts two claims: (1) being denied an optometry appointment for an ongoing serious medical issue; and (2) "being retaliated against for exercising his First Amendment and statutory rights under RLUIPA," because he invoked his right to decline a required prison medical evaluation he deemed inconsistent with his sincerely-held religious beliefs and practices. Dkt. 3 at 2. Having reviewed the Complaint, the Court enters the following Order requiring amendment.

## REVIEW OF COMPLAINT

1. **Standards of Law**

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court liberally construes the pleadings to determine whether a case should be dismissed.

Rule 8 and Title 28 U.S.C. §§ 1915 permit the Court to dismiss civil rights claims for any of the following reasons:

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which amounts to a failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, meaning the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar *sua sponte* (on its own) that otherwise might have been raised as an affirmative defense, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- frivolous or malicious content, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief, *id*.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

A First Amendment Free Exercise Clause claim asserts that the government is

attempting to discourage a religion or practice. The First Amendment absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Prisoners retain their free exercise of religion rights in prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), but a court must balance prisoners' First Amendment rights against the goals of the correctional facility, *Bell v. Wolfish*, 441 U.S. 520 (1979).

A free exercise claim must contain facts establishing five elements: (1) the inmate has a sincerely held belief, and (2) the defendants burdened the practice of religion (3) by preventing the inmate (4) from engaging in conduct mandated by the inmate's faith (5) without any justification reasonably related to legitimate penological interests.

In addition, if the plaintiff knows facts relevant to the four factors from *Turner v. Safley,* 482 U.S. 78, (1987), those should also be included in the complaint. *Turner* requires a Court to address the following when determining whether a challenged prison regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93 (internal citations and punctuation omitted).

A First Amendment retaliation claim must allege the following: "(1) An assertion

that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 (RLUIPA), provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person ... is in furtherance of a compelling governmental interest and … is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Under RLUIPA, the inmate bears the initial burden of showing that the prison's policy constitutes a substantial burden on the exercise of the inmate's religious beliefs.

*Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

RLUIPA is aimed at injunctive relief; it does not provide for damages against the states or state defendants in their official capacities because of Eleventh Amendment immunity. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Further, "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

### 2. Factual Allegations

On December 1, 2023, prison medical staff asked Plaintiff to undergo what he describes as "a random arbitrary medical examination." Dk. 3 at 3. Plaintiff declined, "as to agree would compromise sincerely held beliefs and practices." *Id.* at 4. Staff then placed a "quarantine" magnet on his door. *Id.* Plaintiff complains that staff did not act as if he were actually in quarantine (such as placing him in a negative air flow system cell or wearing masks when interacting with him), but they forced him to act as if he were in quarantine, such as not permitting him to touch the microwave oven to heat his kosher meals, and showering last in his unit of eight cells (the hot water usually would run out before he had his turn). *Id.*

Plaintiff asked Defendant Unit Sergeant Smith "about the cold shower and the medical situation," but Smith did nothing. *Id*. at 6. Defendant Warden Richardson was "also aware of this and fail[ed] to correct" the situation. *Id*. Plaintiff asserts that these Defendants violated and chilled Plaintiff's First Amendment and RLUIPA rights to engage in his sincerely held beliefs. *Id*.

About two weeks into the quarantine period, Nurse Steve Young saw Plaintiff using the microwave oven to heat his dinner and told officers not to permit him to use it. After security staff checked with their supervisors, they were told that Nurse Young did not have authority to prohibit Plaintiff from using the microwave. *Id* at 7. Plaintiff asserts that this sequence of events caused Young to retaliate against Plaintiff.

On January 3, 2024, Plaintiff was scheduled for a dental visit for a toothache and a check-up, but Young told staff not to bring Plaintiff to his appointment unless he agreed to wear a mask. *Id*. Plaintiff refused to wear a mask. Young came to Plaintiff's cell and told him to sign a form saying that he refused medical attention. *Id*.

A few days later, Plaintiff submitted another request to see the dentist for a toothache. Nurse Billings scheduled Plaintiff for a dental appointment three weeks out. On the day of the appointment, Young was not working, and staff escorted Plaintiff to an appointment without requiring him to wear a mask. *Id*. at 8.

About January 3, Plaintiff submitted a request for a bottle of saline eye drops and wrote that he did not consent to be charged a co-pay, due to the policy about waiver of co-pays for chronic conditions, and Plaintiff reported he had been wrongly charged recently. Young came to Plaintiff's cell and told him he would have to charge a co-pay and asked if

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

he still wanted the eye drops. Plaintiff told Young (1) to instead make a request for Plaintiff to see the optometrist so that he could get a prescription to save the cost of each refill, and (2) that his eye condition had worsened and needed to be re-checked. Plaintiff also wanted to be placed on the automatic three-month call-out for re-checks, which was the schedule the optometrist had suggested. Young said he would schedule the optometrist visit.

Two weeks later, Plaintiff asked Young if he had scheduled the optometrist visit. Young said he couldn't remember and would check. Two weeks after that, Plaintiff asked the pill call staff to check the schedule, and Plaintiff had not been scheduled. Plaintiff then asked the nurse on staff to schedule his appointment and to verify with Young whether Plaintiff needed to submit another written request. He did not receive word about the appointment. Finally, Plaintiff submitted a written request ("HSR"), because he did not hear back from the nurse or from Young. *Id*. at 9.

Plaintiff also alleges that Young told him he could not be moved to a different cell unless he put on a mask. Plaintiff complains that prison officials do not wear masks when speaking to him, even though he is still in quarantine for refusing the routine health test.

Plaintiff also complains that Young and the nurse asked the pill call staff to perform a preliminary eye exam on Plaintiff before he could be seen by the optometrist for a regular eye exam. *Id*. at 11-12. Plaintiff asserts that these tests were simply a ruse to get him to refuse to wear a mask so that they could deny him medical treatment "or start a pressure campaign" to get him to give up his beliefs. *Id*. at 12. He asserts that these action were retaliatory. Plaintiff asserts that Nurse Doe and Young's failure to schedule him for an eye

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

examination, even though Plaintiff asked them each to do so twice, amounts to cruel and unusual punishment.

Plaintiff submitted an HSR form to Defendant Schlageter, requesting a follow-up optometrist exam, but Schlageter told him he was entitled to an eye exam only once every two years. Plaintiff asserts that Schlageter "would have seen" that he already had a prior appointment within the two-year time frame, indicating that he had an ongoing problem for which he could be seen more frequently. *Id*. at 3. Plaintiff asserts that this is deliberate indifference. He has not stated whether he filed a grievance to address this issue, which would have revealed the reason for Schlageter's actions.

3. Discussion

As to the medical claims, Plaintiff has not provided sufficient allegations to show that he had a serious medical need that was not addressed in due course, or, if it was an emergency, what facts show that immediate attention was required. It is also unclear from the pleadings whether or when Plaintiff is permitted to make medical requests to staff in person and when he is required to submit a written HSA. He will be permitted to file an amended complaint to correct the deficiencies in his Eighth Amendment claim.

As to the religious claims, Plaintiff has not provided sufficient allegations to show which health test was requested, what his sincerely-held religious beliefs are, how the health test substantially burdened or violated his right to practice his religion, and whether he complained to these particular defendants that the reason he could not take the test was that it was contrary to his sincerely-held religious beliefs. Plaintiff must provide additional

explanatory facts about why he refused the medical test to avoid dismissal of his First Amendment and RLUIPA claims.

Plaintiff will be given leave to amend his Complaint to state additional factual allegations to support his claims or to omit claims if he has insufficient facts. RLUIPA claims must be separated from First Amendment claims, due to the limitation on RLUIPA remedies.

## PENDING MOTIONS

### 1. Motion for Expedited Review of Complaint

Plaintiff has filed a motion for emergency injunctive relief. He states, "[a]s of filing (mailing), his life or risk to 'limb' (specifically here sight) is not at risk, but it is very time sensitive needing a quick resolution." Dkt. 4 at 1.

Issuance of a preliminary injunction is appropriate where a plaintiff can show that (1) there are "serious questions going to the merits," (2) there is a "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011).

Plaintiff's statement does not meet that standard because it is unclear what emergency he faces, what "time sensitive" but "not at risk" means, and whether he has been scheduled for an appointment. The motion will be denied without prejudice.

### 2. Motion to Stay Decision on In Forma Pauperis Application

Plaintiff requests that the Court refrain from ruling on his in forma pauperis request until he determines whether he may soon receive the needed medical attention at the prison.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

He believes that pursuing the retaliation claims, alone, "are not worth the courts (and tax payers) time." Dkt. 6 at 2 (verbatim).

Once a prisoner has submitted a complaint, he has engaged court resources to process it. The Prison Litigation Reform Act (PLRA) permits prisoners to begin a civil suit without prepayment of fees under 28 U.S.C. § 1915(a), but they are nevertheless "required to pay the full amount of a filing fee." 28 U.S.C. 1915(b)(1). Because Plaintiff chose to begin a lawsuit and the Clerk of Court processed the filing when submitted, Plaintiff must pay the fee for use of the public resources.

### 3. Motion to Conditionally Withdraw his Complaint

Plaintiff has filed a Motion to Conditionally Withdraw the Complaint. Dkt. 7. He would like to withdraw his Complaint only if the Court will not assess him an in forma pauperis fee. Plaintiff may withdraw his Complaint if he desires, but, as described above, he has already caused the Court to perform work on his case; therefore, this motion will be denied.

## ORDER

**IT IS ORDERED**:

1. Plaintiff's Motion to Conditionally Withdraw Complaint (Dkt. 7) is DENIED. If he desires to withdraw his Complaint, he must do so without condition.

2. The Motion to Stay Decision on In Forma Pauperis Application (Dkt. 1) is DENIED.

3. Plaintiff's Motion for Expedited Review (Dkt. 4) is DENIED without prejudice.

4. Plaintiff will be required to file an amended complaint, correcting the deficiencies described above, within 30 days after entry of this Order. Alternatively, he may file

a motion for voluntary dismissal. If he does not file an amended complaint, the Complaint will be dismissed for failure to state a claim without further notice to Plaintiff.

DATED: November 13, 2024

_____
David C. Nye
Chief U.S. District Court Judge