UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>           Plaintiff,<br><br>     v.<br><br>STEVE YOUNG, et al,<br><br>           Defendants. | Case No. 1:24-cv-00117-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

## BACKGROUND

This case is about a prisoner's asserted right to be free from routine tuberculosis (TB) testing and a quarantine resulting from his refusal to be tested. In *Johnson v. Sherman*, 2007 WL 1029856 (E.D. Ca. April 2, 2007), the Court found:

> [A] tuberculosis skin test determines whether an inmate has been exposed to the tuberculosis disease. Even if the inmate does not have active tuberculosis, the skin test will establish whether he was exposed to the disease. The test will alert prison officials to the presence of the disease, reveal the location and extent of the outbreak, and the effectiveness of treatment measures. A chest x-ray does not provide any of this information.

*Id*. at *4 (record citations omitted). "[T]uberculosis is particularly dangerous in a prison environment, where overcrowding and poor ventilation can hasten the spread of this airborne disease." *See Madrid v. Gomez*, 889 F. Supp. 1146, 1205 (N.D. Cal. 1995).

In this case, Plaintiff Kent Williams refused to take a routine tuberculosis test. He was not forced to take the test, but prison officials imposed an allegedly "fake quarantine"

that he alleges violated his religious freedom and general right to refuse medical treatment. He asserts that officials retaliated against him for refusing to take the test by implementing harsher conditions such as cold showers (seven other inmates in the unit were permitted to shower before he did so that the janitor could clean the shower directly after him each day), not being able to use the unit's microwave oven for a time, having to wear a mask when he left his cell, and refusing him medical treatment when he refused to wear a mask to appointments.

On November 13, 2024, the Court issued an Initial Review Order requiring Plaintiff to file an amended complaint. Dkt. 9. Plaintiff sought an extension of time to file. Dkt. 10. The Court granted the motion and informed Plaintiff that his amended complaint must comply with the Court's Orders and General Order 342. Dkt. 11. General Order 342 limits prisoner complaints to 20 pages. Plaintiff previously had a case dismissed for his refusal to comply with General Order 342. *See Williams v. Stewart*, Case No. 1:18-cv-00343-DCN (Case 343). Dismissal as a sanction was affirmed on appeal S*ee* Case 343, Dkt. 29. As here, in Case 343 Plaintiff asked the Court to be excused from complying with the page limitation several times. *See* Case 343, Dkt. 21 at 2.

After the Court warned Plaintiff that an amended complaint must comply with General Order 342, Plaintiff filed a 35-page Amended Complaint (Dkt. 18) and a 20-page "provisional" Amended Complaint (Dkt. 18-2) on March 17, 2025. He explained that the 35-page complaint contained his complete allegations and was filed to show the Court of Appeals for the Ninth Circuit that he should not be held to a 20-page pleading; alternatively, he argued that, if the Court still required a 20-page pleading, the Court could accept the 20-

page "provisional" pleading (Dkt. 18-2) as Plaintiff's amended complaint. Dkt. 17.

On May 20, 2025, the Court concluded that Plaintiff's Amended Complaint (Dkt. 18) should be stricken for failure to comply with General Order 342. Dkt. 20. The Court also informed Plaintiff that it would not accept his "provisional" amended complaint and he must file a compliant amended complaint. Dkt. 20. Nevertheless, on May 29, 2025, instead of filing a proper second amended complaint, Plaintiff filed another motion asking the Court to accept the "provisional" amended complaint. Dkt. 21.

## MOTION TO AMEND/CORRECT COURT ORDER

As the one-and-a-half year history of this case shows, Plaintiff has repeatedly failed to file a proper pleading. He has ignored the Court's Orders and refused to follow General Order 342 except upon the condition that the Court accept his "provisional" amended complaint. Plaintiff's refusal to follow the Court's Order resulted in the Court having to review a total of 55 pages, which defeats the efficiency purposes of General Order 342.

To add to the Court's difficult job of reviewing Plaintiff's improper filings, he has also made various attempts to intimidate the Court. First, he has threatened to pursue duplicate litigation. He states he will continue to file lawsuits challenging the Court's requirement that Plaintiff use the prison's designated copying and e-filing access-to-courts services, despite the Court's rulings that he is to pursue those claims only in *Williams v. Leeflang*, Case No. 1:22-cv-00052-DCN (Case 52). *See* Dkt. 21 at 3.

Second, he also threatens that failure to accept either the 35-page amended complaint or the 20-page "provisional" amended complaint will result in an appeal. *See* Dkt. 17 at 3. But Plaintiff has not submitted his 20-page "provisional" amended complaint

in good faith. The Court will not accept the "provisional" amended complaint, because Plaintiff has intentionally crafted it in a deficient way to aid a future appeal.

The 20-page amended complaint contains extraneous narratives and does not comply with the "short and plain statement" requirement of Rule 8. He discusses epidemiological information, how prison quarantines should be conducted, and whether the Court is qualified as an epidemiologist. The 20-page amended complaint also contains verbatim conversations, speculative observations, and personal judgments about each Defendant, rather than a summary of facts addressing the elements of the causes of actions. Because Plaintiff will not revise his overdone pleadings to comply with Rule 8, he ran out of room in the 20-page complaint to include factual allegations about some of the Defendants. He simply states a name, a conclusion of law, and a statement of "no room to detail." Dkt. 18-2 at 18-19. Plaintiff wants the Court to agree to accept this page-limit-compliant but content-deficient pleading to create an issue for appeal, as Plaintiff has foreshadowed in his motions.

Plaintiff is attempting to checkmate the Court by ignoring orders and instead offering a choice between a 35-page noncompliant complaint and the 20-page factually-deficient complaint that could be—but won't be—fixed by revision. Federal court litigation is not like a chess match or any other game. Clearly, it is possible for Plaintiff to reduce the size of his pleadings by omitting the extraneous verbiage and including brief factual allegations for every Defendant, but he refuses to do so.

Plaintiff used a similar tactic in *Williams v. McKay*, 20-cv-00008-REP (Case 08), to attempt to set up facts for an appeal:

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 4

> Plaintiff has filed a notice stating that he will not comply with any discovery order in this case because he will not submit his documents to prison officials for copying, because, again, he disagrees with the prison's regular copying procedures. He asks the Court to dismiss his case for failure to comply with discovery so that he can appeal the prison copying procedures issue. If Plaintiff desires to voluntarily dismiss his case because he does not desire to comply with discovery requests or orders, he may do so. If Plaintiff does not comply with discovery requests and orders in this case, Defendants may file a motion to dismiss Plaintiff's case for that reason, if appropriate from the procedural facts. At this point, it would be premature for the Court to dismiss Plaintiff's case for failure to comply with discovery orders when no discovery has been propounded.

Case 08, Dkt. 199 at 1-2. Case 08 was eventually dismissed for Plaintiff's failure to comply with discovery rules, but that case would have been in a completely different posture for appeal if the Court would have been goaded into dismissing the case prematurely.

In this case, Plaintiff has been notified that failure to file pleadings that comply with Court Orders and General Order 342 will be cause for dismissal with prejudice. *See* Fed. R. Civ. P. 41(b). Dkt. 20; *see* Case 343, Dkt. 29 (December 9, 2020 Memorandum Decision of United States Court of Appeals for the Ninth Circuit). Because Plaintiff has again disregarded a court order by asking the Court to accept his "provisional" amended complaint in the face of the Court's Order notifying him that it would *not* accept his "provisional" amended complaint, sanctions are warranted.

A district court may sua sponte dismiss a case with prejudice "for failure to comply with a court order." *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (stating that "[d]istrict courts have inherent power to control their dockets" and "[i]n the exercise

of that power they may impose sanctions including, where appropriate, default or dismissal").

In *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999), the Court explained the factors to consider when determining if dismissal is a proper sanction:

> [I]n order for a court to dismiss a case as a sanction, the district court must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). We "may affirm a dismissal where at least four factors support dismissal, ... or where at least three factors 'strongly' support dismissal." *Id*. (quoting *Ferdik*, 963 F.2d at 1263).

*Id*. at 990.

The first and second factors—expeditious resolution and case management—weigh heavily in favor of dismissal. The Court cannot adjudicate the merits of this case if Plaintiff will not follow reasonable court orders to submit a complaint that contains factual allegations against all Defendants, rather than purposely defying Rule 8 and asserting that the page limit is preventing him from including facts showing how the last few Defendants are liable for Plaintiff's alleged injuries. Court time that should be allocated to other pending cases is wasted when Plaintiff disregards a plain and simple rule. He has acted similarly in the past, such as when the Court attempted to enforce the 20-page limit in another case. *See* Case 52 ("In response to the Order notifying Plaintiff that he was not permitted to file a 73-page Second Amended Complaint with unnecessary introductions

but must file separate 20-page pleadings outlining specific factual allegations against each defendant, Plaintiff did not condense his 73 pages into a few short and plain statements," but instead increased the size of his pleadings to 579 pages, divided into 33 separate third amended complaints.).

If the Court does not impose the sanction of dismissal here, the risk of prejudice to Defendants is high. The Court and Plaintiff might go around and around on his pleadings for years (as in his other cases), during which time witnesses' memories fade or witnesses become unavailable, documentary evidence may be lost or destroyed, and time and energy of Defendants and their counsel is wasted while they take precautionary measures to garner a defense while they wait. If the Court proceeds on a deficient amended complaint that should be fixed by Plaintiff, he will later institute an appeal that could have been prevented had he prepared a new amended complaint in good faith, by cutting back unneeded information and including facts addressing elements of the claims against all Defendants. Neither Defendants nor the Court of Appeals should be forced to waste their time on Plaintiff's plan to carry through with the merits of incomplete pleadings for the purpose of appealing a procedural issue that a good-faith amendment would have prevented.

The public policy factor favoring disposition of cases on their merits preliminarily weighs in Plaintiff's favor, but the benefits of the merits determination factor is outweighed by the fact that he is wasting public resources with his litigation tactics. Plaintiff has had three other cases dismissed as sanctions for noncompliance with court procedural orders and rules, and yet has not modified his litigation tactics to permit his claims to be heard on the merits. *See* Case 343 (refusing to follow General Order 342); Case 08 (refusing to

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 7

follow discovery orders); and *Williams v. Brooks*, 1:17-cv-00223-DCN (refusing to follow discovery orders).

There are no "less drastic alternatives," because Plaintiff has engaged in repetitive noncompliance with court orders in multiple cases. Plaintiff insists on having it his way, including inventing procedural devices that do not exist, such as a "provisional" pleading, and peddling his provisional amended complaint to the Court in bad faith. For all of these reasons, Plaintiff's case will be dismissed with prejudice as a sanction for repeated non-compliance.

## MOTION FOR EMERGENCY INJUNCTION

Plaintiff asserts that his current conditions of confinement place *him* at risk of contracting infectious diseases from *other* inmates. This is not the subject of this lawsuit, but the converse of it. Here, he claims prison officials should *not* have taken steps to protect other inmates from his potential infectious disease. "A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology v. Queen's Medical Center*, 810 F.3d 631, 633 (9th Cir. 2015). The Court cannot grant injunctive relief on claims not included in the pleadings.

Regardless of the foregoing deficiency, Plaintiff is not being permitted to proceed on his pleadings here, mooting his emergency injunction request. Plaintiff is free to file a new lawsuit on these claims if facts warrant litigation after exhausting his administrative remedies at the prison.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Amend/Correct Court Order (Dkt. 21) is DENIED.

2. Plaintiff's entire case is DISMISSED with prejudice under Rule 41(b).

3. Plaintiff's Motion for an Emergency Injunction (Dkt 22) is DENIED without prejudice to reasserting his claims in a new lawsuit.

4. Plaintiff's Motion for Order Compelling Preservation of Evidence (Dkt. 23) is DENIED without prejudice to reasserting it in a new action. In any event, Plaintiff first must contact the prison and state attorney general in writing to request preservation before petitioning the Court for relief in a new action.

5. Plaintiff's Motion for Expedited Review of Motion for Order Compelling Preservation of Evidence (Dkt. 24) is GRANTED to the extent that the Court has reviewed this case and the motion.

DATED: September 17, 2025

David C. Nye
Chief U.S. District Court Judge